IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIV. ACTION NO. 1:16-cv-125

DANTE A. MURPHY,

    Plaintiff,

v.

CLEVELAND COUNTY
DEPARTMENT OF SOCIAL
SERVICES, and KAREN ELLIS,
DIRECTOR, CLEVELAND COUNTY
DEPARTMENT OF SOCIAL
SERVICES,

    Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

## I. INTRODUCTION

Dante Murphy ("Plaintiff" or "Mr. Murphy") brings this action against Defendants under North Carolina common law and under the provisions of 42 U.S.C. 1981, 42 U.S.C. 1983 and 42 U.S.C. 1988. Plaintiff seeks damages and injunctive relief against Defendants for violating his Civil Rights and for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiff of rights secured him under the Constitution and laws of the United States, retaliating against Plaintiff for his exercise of Constitutionally protected speech, discriminating against him on the basis of his race, and for refusing to or neglecting to prevent such deprivations and denials to Plaintiff.

Plaintiff further states as follows:

## II. PARTIES, JURISDICTION & VENUE

1. Plaintiff Dante A. Murphy is a resident of Shelby, Cleveland County, North Carolina.

2. Defendant Karen Ellis is the Director of Social Services for Cleveland County Department of Social Services, and upon information and belief is a resident of Shelby, Cleveland County, North Carolina. She is sued for damages in her individual capacity and for declaratory and injunctive relief in her official capacity.

3. Defendant Cleveland County Department of Social Services (hereafter "DSS") is a North Carolina Social Services Agency within the meaning of N.C.G.S. Sec. 108A-1. DSS is a "person" within the meaning of 42 U.S.C. Section 1983. Defendant DSS maintains an office in and has at all relevant times regularly conducted business in Shelby, Cleveland County, North Carolina.

4. Plaintiff seeks damages greater than $25,000 such that the total amount in controversy for this matter is in excess of $25,000.00. This Court has jurisdiction in this matter pursuant to 28 U.S. C 1331 and 1343. This Court is an appropriate venue for this action pursuant to 28 U.S.C. 1391(b)(1) and (b)(2).

## III. FACTUAL STATEMENT

5. Plaintiff Dante A. Murphy is 46 years of age. He is African American. Mr. Murphy has a Bachelors degree in Mathematics from the University of North Carolina at Wilmington, a Masters Degree from Campbell University, a Master of Divinity Degree from Gardner-Webb University, and has partially completed a doctoral degree from Drew University.

6. Mr. Murphy is a practicing Baptist and is Pastor of the Shiloh Baptist Church in Shelby, North Carolina. Mr. Murphy is also the past President of the Cleveland County Branch of the NAACP and First Vice Moderator of the Ebenezer Missionary Baptist Association.

7. Prior to employment with Defendants Mr. Murphy worked for over 15 years providing social services for children and families. Mr. Murphy was employed at the YMCA, Coastal Horizon Center, and the Methodist Home for Children, working with youth and families group home and foster care in various locations in Eastern North Carolina. Mr. Murphy was employed with the Gaston County Department of Social Services prior to working with Cleveland County.

8. Mr. Murphy was hired as a Social Worker by Cleveland County DSS in 2006 and has worked continuously with DSS since his hire.

9. Mr. Murphy reports directly to Social Work Supervisor (SWS) Sarah McDowell. Ms. McDowell reports to Program Manager Pam Bright, who is Caucasian. Ms. Bright in turn reports to Deputy Director Jane Shooter, who is Caucasian. Ms. Shooter in turn reports to the Director of Social Services, Karen Ellis who is Caucasian.

10. In his role as Pastor of Shiloh Baptist Church, Mr. Murphy frequently preaches against political oppression and the practices that cause inequality as well as the societal ills which are caused by inequality among people. Mr. Murphy has been a preacher of the Gospel of his Baptist faith since 1989. It is known that within the context of the African American faith tradition pastors often serve as the voice and advocacy for social justice. Mr. Murphy also holds strong convictions that the Holy Bible mandates

that the church be the voice for underprivileged and disenfranchised members of the community.

11. In his past role as President of the Cleveland County NAACP Mr. Murphy has become known as an outspoken advocate for minorities, and against the disparities in hiring practices. His opposition to the destruction of voting rights has been the subject of numerous newspaper articles and online magazines and posts. His outspoken advocacy on behalf of minorities and related protected speech are well known to Defendant Ellis and other managing agents of the Defendant DSS.

12. For three consecutive years Mr. Murphy applied for positions of Supervisor within DSS. The positions he sought included Child Protective Supervisor positions. Mr. Murphy was denied each position to which he sought promotion although he was better qualified than at least two of the three candidates. The denial to Mr. Murphy of those supervisory positions was not based on merit, but instead based on his public statements expressing his concerns about race discrimination as well as his political views, as well as his practice of his religion and his race, African-American.

13. It is well recognized within DSS that the Social Work position in which Mr. Murphy works has very long hours and very difficult working conditions, especially in comparison to the position of Social Work Supervisor. Thus, Social Workers work in the field often and work a seven day on, seven day off schedule. They spend a lot of time traveling from house to house and due to the emotionally difficult situations are often subject to physical threats and extreme emotional distress. For example, Mr. Murphy has been bitten twice by clients' dogs and suffered a severe fall from avoiding a third dog attack. Mr. Murphy has also suffered two falls that required hospital visits-one of which

required transportation by ambulance. Moreover, due to the seven day on schedule, Mr. Murphy and other Social workers frequently miss celebrating family birthdays, anniversaries and holidays. In contrast Social Work Supervisors work a five day week with hours from approximately eight to five and are rarely called out on emergencies or have direct contact with clients.

14. On or about November 30, 2011 Mr. Murphy applied for a Social Work Supervisor III position, the first of three supervisory positions for which he applied. Mr. Murphy was well qualified and better qualified than the person eventually selected who is a Caucasian female.

15. On or about December 2, 2012, Mr. Murphy again applied for the open position of Social Work Supervisor III. The individual selected was a Caucasian female.

16. In or about April 25, 2013, Mr. Murphy again applied for the open position of Social work Supervisor III. He was better qualified than the person who was selected, who had worked at DSS less than two years. That position was filled in or about mid-May, 2013.

17. During the time of applying for the position of Social Worker Supervisor III in 2013, Mr. Murphy was engaged in community discussions regarding efforts by the KKK to reignite its efforts to increase its membership in the Cleveland County area. Mr. Murphy spoke out against the KKK movement and was the subject of a newspaper article in the local newspaper, at or around the time decisions were made to fill the social supervisor position. In the article Mr. Murphy sharply criticized state legislators and denounced the KKK. Mr. Murphy is quoted in the paper as saying "I'm more concerned with legislators who have the power to pass laws that suppress people…. I think we have

5

a lot more pressing issues in America. They're just another group exercising their right to free speech."

18.     On and around May 20, 2014 Mr. Murphy was the subject of several newspaper articles and television reports surrounding the hiring of the county's school superintendent, who is Caucasian. Mr. Murphy denounced the hiring practices of the county school board, and appeared on television asking the newly hired superintendent, who is Caucasian, to "[r]esign this position effective immediately, and spare this school system and the community the agony which lies ahead."

19.     On July 5, 2014 Mr. Murphy was a primary subject of an article in the Charlotte Observer which was read in Cleveland County. In the article Mr. Murphy was quoted posing opposition to the Cleveland County Board of Elections' decision to create new voting districts in the County, stating "nobody has given us a good reason of why to merge." The Cleveland County Board of Elections is made up of and was at the time made up of white males only.

20.     On July 7, 2014 Mr. Murphy was a primary subject of an article in the New York Times which was publicized in Cleveland County. In the article Mr. Murphy is quoted as sharply criticizing the Cleveland County Board of Elections' decision to create new voting districts in the County, stating his belief that the redistricting was racially motivated. The Cleveland County Board of Elections at that time was made up only of Caucasians.

21.     On July 8, 2014, Mr. Murphy attended the local meeting of the Board of Elections. During this meeting Mr. Murphy posed strong opposition to one of the board

members' stance that race is no longer a problem in America. Mr. Murphy expressed that he was willing to go to jail in protest to the minimizing of race issues in America.

22. Shortly after appearing in the New York Times, Mr. Murphy's supervisor told him "stay your ass out of the paper."

23. On July 10, 2014 shortly after the local newspaper article, Mr. Murphy returned to work and was the center of discussion in one of the supervisor's office whereby one supervisor stated, "he showed his ass." Mr. Murphy's immediate supervisor was a part of this gathering.

24. Beginning in May, 2014, Mr. Murphy applied for medical leave. His requests for leave gave notice to Defendants of his entitlements under the Family Medical Leave Act ("FMLA") for leave to care for his family members, including his mother, daughter and wife, each of whom required medical treatment.

25. During relevant times since May, 2014, Mr. Murphy has been wrongfully harassed about his requests for FMLA leave, and wrongfully denied FMLA leave. The denial to Mr. Murphy of FMLA leave was not based on the merit of his applications, but instead based on his public statements about race discrimination and political views as well as his practice of his religion and his race.

26. On July 28, 2014 after Mr. Murphy informed his supervisor his daughter had been injured and asked his supervisor for medical leave, he was told he couldn't take FMLA leave, only sick leave, in spite of asking for leave which was protected under the FMLA.

27. On October 22, 2014 and October 28, Mr. Murphy was wrongfully denied medical leave for his mother's hospital time. He was also told that the time he was

scheduled to be out would still count against FMLA time even though he was not given FMLA time. Mr. Murphy was ultimately granted FMLA after being harassed and told he could not take FMLA.

28. On November 5, 2014, Mr. Murphy was told by his supervisor that he could not preach at church while out on FMLA leave. For nearly seven minutes his supervisor made repeated attempts to pressure him to agree not to preach while on FMLA. She threatened him after he questioned her reasoning, stating ""oh God this is never going to end."

29. At times Mr. Murphy's supervisor told him he would have to find his own coverage before FMLA would be granted.

30. On or about November 7, 2014, Mr. Murphy was told by Program Pam Bright that the Director Karen Ellis never said that Mr. Murphy could not preach, but Ms. Bright never apologized for, denied, or responded to Mr. Murphy's statements that he had been told this by his supervisor.

31. On or about November 7, 2014, Program Manager Pam Bright did solicit personal and confidential information, which was not required or relevant to the FMLA, about Mr. Murphy's mother.

32. Shortly after local, state, and national media coverage regarding Mr. Murphy's community activism Mr. Murphy was denied FMLA protection to care for his daughter. As a substitute he was granted regular sick time off.

33. Shortly after local, state, and national media coverage regarding Mr. Murphy's community activism, Mr. Murphy's supervisor also told him she didn't think he could take FMLA and preach at his church. She repeated asked him, "Would he be

8

preaching or not?", trying to force him to give an answer to a question she should not have been asking. There was an ongoing conversation about his preaching, even though Mr. Murphy had filled out the DSS Secondary Employment Application in May, 2007 and had been approved for the work at that time. Moreover, upon information and belief, over 20% of the DSS employees engage in Secondary employment.

34. SWS McDowell compared Mr. Murphy's preaching to working at McDonald's, stating that both were secondary employment.

35. Shortly after local, state, and national media coverage regarding Mr. Murphy's community activism Program Manager Pam Bright admitted that Director Karen Ellis inquired about Mr. Murphy continuing to preach, even though this question should not have been asked and even though Mr. Murphy had filled out the DSS Secondary Employment Application in May, 2007 and had been approved for the work at that time.

36. Mr. Murphy filed his EEOC charge against Cleveland County Department of Social Services on or about May 4, 2015. He was issued a right to sue letter on or about February 29, 2016.

37. On or about May 29, 2015 Mr. Murphy's immediate supervisor produced a public document, falsely stating that "I have never discouraged or attempted to bar Mr. Murphy from preaching."

38. On or about June 5, 2015, Human Resources Director, Allison Mauney, produced a public document, with false, defaming, and contradicting statements regarding all claims made by Mr. Murphy in his claim to the EEOC.

39. On or about November 5, 2015 Mr. Murphy's immediate supervisor admitted in that same public document that she inquired "if [Mr. Murphy] was going to preach while during his FMLA", even though this question should not have been asked and even though Mr. Murphy had filled out the DSS Secondary Employment Application in May, 2007 and had been approved for the work at that time.

40. On or about November 5, 2015 Mr. Murphy's immediate supervisor admitted in that same public document that Mr. Murphy posed opposition to being told that he could not preach by stating "the agency could not prevent him from preaching."

41. On or about November 5, 2015 Mr. Murphy's immediate supervisor admitted in that same public document making the statement that "preaching was his secondary job just as if he was working at McDonald's." Mr. Murphy's immediate supervisor failed to admit in this statement that her comparing Mr. Murphy's preaching to McDonald's was done at least four times.

## IV. LEGAL CLAIMS

**A. Plaintiff's First Cause of Action** *( Pursuant to 42 U.S.C. 1983 and 1988, Violation of First Amendment Rights—Against All Defendants)*

42. The allegations contained in the above paragraphs are incorporated by reference herein.

43. Plaintiff's preaching at his church, the Shiloh Baptist Church, and his participation in activities speaking out against race discrimination in elections and other political processes of Cleveland County are protected speech under the First Amendment to the U.S. Constitution.

44. Plaintiff's protected speech was done outside of work, whether he was at his Church pulpit on a Sunday morning, or meeting with members of the Cleveland County Board of Elections, or other community meeting and activities.

45. Plaintiff's protected speech never interfered with his work duties for the Defendant DSS.

46. Defendants violated Plaintiff's right to free speech by a) denying him promotion to the Social Work Supervisor positions which became open and were filled in 2011, 2012 and 2013, b) threatening his employment both inside and outside of the Cleveland County DSS and with the Shiloh Baptist Church by keeping him in a work position that provided less contact with his parishioners, keeping him in a work position that has high turnover and preventing him from upward mobility within the agency and other agencies; c) interfering with his free speech rights by telling him to "stay your ass out of the paper," and attempting to bar Mr. Murphy from preaching and d) retaliating against him by repeatedly denying him promotions for positions for which he was best qualified.

47. Defendants acted intentionally and with callous disregard for Mr. Murphy's clearly established U.S. Constitutional rights.

48. As a proximate and foreseeable result of Defendants' conduct, Plaintiff has suffered lost wages and benefits, lost work opportunities within the Shiloh Baptist Church, suffered emotional distress, mental anguish, stress, anxiety, embarrassment, humiliation, and his peace of mind has been disturbed.

49. As a proximate result of Defendants' wrongful conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other

11
Case 1:16-cv-00125-MR-DLH    Document 1    Filed 05/07/16    Page 11 of 14

damages in an amount in excess of Twenty Five Thousand Dollars ($25,000.00), and is entitled to recover compensatory damages in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

### B. Plaintiff's Second Cause of Action-*Violation of Civil rights Under 42 USC 1981and 42 USC 1983, and 1988*

50. The allegations contained in the above paragraphs are incorporated by reference herein.

51. Defendants have intentionally discriminated against Plaintiff in violation of 42 U.S.C.Section 1981 by (1) denying promotions to Plaintiff in whole or in part on the basis of race; (2) denying Plaintiff FMLA leave to which he was entitled in whole or in part on the basis of race, (3) harassing Plaintiff, and (4) denying Plaintiff equal terms and conditions of employment in whole or in part on the basis of race.

52. As a proximate and foreseeable result of Defendants' conduct, Plaintiff has suffered lost wages and benefits, lost work opportunities within the Shiloh Baptist Church, suffered emotional distress, mental anguish, stress, anxiety, embarrassment, humiliation, and his peace of mind has been disturbed.

53. As a proximate result of Defendants' wrongful conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages in an amount in excess of Twenty Five Thousand Dollars ($25,000.00),

12

and is entitled to recover compensatory damages in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

55. Defendants' actions were done maliciously, willfully or wantonly, or in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages in an amount in excess of $25, 000.00.

## **JURY TRIAL DEMANDED**

WHEREFORE, the Plaintiff prays the Court to:

     A. Enter a judgment against Defendants for declaratory relief regarding the unlawful and unconstitutional acts and practices of Defendants;

     B. Order Defendants to pay Plaintiff compensatory damages in excess of Twenty Five Thousand Dollars ($25,000.00),

     C. Order appropriate equitable relief against all defendants under the Civil Rights Act of 1871, 42 U.S.C. 1983;

     D. Award Plaintiff all reasonable costs and attorneys' fees incurred in connection with this action;

     E. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances;

     F. Grant the Plaintiff a trial of this matter by a jury.

This the 6th day of May, 2016.

                                           **Fosbinder Law Office**

                                           /s/Julie H. Fosbinder

                          Julie H. Fosbinder
                          501 East Morehead St., Suite One
                          Charlotte NC 28202
                          Telephone - (704) 333-1428
                          Facsimile – (704) 333-1431
                          Email: jhanfos2@gmail.com